IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY<br>OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>TYNAN MULLAN, et al.,<br><br>      Defendants. | Case No. 22-cv-00832-SRB |

## ORDER

Before the Court is Plaintiff Safeco Insurance Company of America's ("Safeco") Motion for Summary Judgment. (Doc. #79.) For the reasons stated below, the motion is GRANTED.

### I. FACTUAL BACKGROUND[1]

In March 2019, Riley McCrackin ("Decedent"), the son of Defendant Jeromy McCrackin ("McCrackin") was shot and killed behind a pool hall in Raytown, Missouri. Video surveillance captured the shooting, and the Raytown Police identified four people as having been involved. One of those individuals is Defendant Tynan Mullen ("Mullen" or collectively with McCrackin as "Defendants"). Mullen was originally charged with first-degree murder and armed criminal action but eventually pled guilty to first-degree involuntary manslaughter for the shooting.

Based on the shooting, McCrackin filed a wrongful death suit against Mullen in the Circuit Court of Jackson County, Missouri on February 3, 2022. In August 2022, McCrackin's counsel requested information on Safeco homeowner's insurance policy ("Safeco Policy") for

---

[1] The following facts are taken from the parties' briefs and the record, and are either uncontroverted or deemed uncontroverted by the Court. Additional facts relevant to the pending motion are discussed in Section III.

the residence where Mullen lived.[2] In October 2022, McCrackin's counsel made a demand for payment under the Safeco Policy in exchange for a release and settlement of the wrongful death claim against Mullen. Safeco denied coverage stating that the Safeco Policy does not provide coverage for the claim presented. McCrackin filed two subsequent amendments to his wrongful death petition, including in December 2022 and March 2023 ("Second Amended Petition"). The Second Amended Petition alleges that Mullen "intended to pull a prank on Decedent" and that he "shot his gun up in the air for the purpose of scaring Decedent" but that another individual involved in the "prank" then "fired and struck Decedent who later died from the gunshot wound." (Doc. #26-1, p. 2.) From these allegations, McCrackin alleges claims for negligence and failure to warn. Safeco denied subsequent demands for payment based on the changes to the Petition.

Safeco filed its Amended Complaint for Declaratory Judgment before this Court on February 7, 2023. Safeco filed this action "for the purpose of determining the parties' rights and obligations, if any, under an insurance policy issued by Safeco to nonparty herein Norma Aker[.]" (Doc. #11, p. 1.) On May 3, 2023, the Court stayed this case pending the resolution of the state court action. On January 15, 2025, the Court lifted that stay.

Safeco has now filed a motion for summary judgment seeking a declaration "that the Safeco Policy provides no coverage for McCrackin's claim against Mullen, and therefore, that Safeco has no duty to defend or indemnify Mullen." (Doc. #80, p. 7.) Defendants disagree that Safeco has no duty to defend and ask the Court to stay its decision on Safeco's duty to indemnify. The parties' arguments are addressed below.

---

[2] Mullen appears to have lived with his grandmother, Norma Aker, who is the Safeco Policy holder. Safeco does not dispute in this Motion that Mullen is an Insured under the Safeco Policy but "reserves its right to litigate, if necessary, the question of whether Mullen indeed qualifies" as Insured. (Doc. #80, p. 29.)

2

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III. DISCUSSION

Safeco argues there are six reasons why it has no duty to defend, "and thus no duty to indemnify" Mullen under the Safeco Policy. (Doc. #80, p. 7.)[3] The Court finds it sufficient only to address two of its arguments below.

Because jurisdiction in this case is based on diversity, the Court applies state substantive law, and the parties do not appear to dispute that Missouri law applies. *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595 (8th Cir. 2007). To determine whether an insurer has duty to defend a suit against its insured, the Court must compare the insurance policy language with facts: "(1) alleged in the petition [against the insured]; (2) the insurer knows at the outset of

---

[3] The Court agrees with Safeco that "[w]here there is no duty to defend, there is no duty to indemnify." *Brand v. Kansas City Gastroenterology & Hepatology, LLC*, 414 S.W.3d 546, 556 (Mo. App. W.D. 2013) (quoting *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.*, 71 S.W.3d 232, 236 (Mo. App. W.D. 2002)).

3

the case; or (3) that are reasonably apparent to the insurer at the outset of the case." *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 553 (Mo. 2014). Generally, "[t]o extricate itself from the duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005) (emphasis in original).

As for interpreting the insurance policy itself, those rules are well settled. *See Columbia Mut. Ins. Co. v. Schauf,* 967 S.W.2d 74, 77 (Mo. banc. 1998). The Supreme Court of Missouri has given the following guidance for interpreting insurance policies:

> The general rules for interpretation of other contracts apply to insurance contracts as well. The key is whether the contract language is ambiguous or unambiguous. When there is ambiguity in an insurance policy, the Court must interpret the policy in favor of the insured. However, where insurance policies are unambiguous, they will be enforced as written.

*Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc. 2007) (internal quotations and citations omitted).

### A. Whether Decedent's Death was Caused by an "Occurrence"

Safeco argues that it has no duty to defend because Defendants "cannot carry their burden of proving Decedent's death was caused by an 'occurrence' under the Safeco Policy." (Doc. # 80, p. 32.) Defendants disagree that McCrackin's claim falls outside the scope of the Safeco Policy.

Here, the Court begins by laying out the relevant language of the Safeco Policy. First, the Safeco Policy provides that

> If a claim is made or a suit is brought against any insured for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, [Safeco] will:
>
> 1. Pay up to [its] limit of liability for the damages for which the *insured* is legally liable; and
> 2. Provide a defense at our expense . . .[.]

4

(Doc. #11-1, p. 30) (emphasis in original).

Second, the Safeco Policy defines "occurrence" as

An accident, including exposure to conditions which results in:

> (1) *Bodily injury*; or
> *(2) Property damage*

(Doc. #11-1, p. 41) (emphasis in original).

Under Missouri law, when an insurance policy defines an "occurrence" as meaning an "accident," the term "accident" is given its common meaning:

> An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as to die by an accident.

*J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 341 (8th Cir. 2007) (citing *Hawkeye–Security Ins. Co. v. Davis*, 6 S.W.3d 419, 425 (Mo. Ct. App. 1999)).

Considering the above, the Court must determine whether the facts as alleged in the Second Amended Petition against Mullen, or facts that Safeco actually knew or were "reasonably apparent" at the time of the Second Amended Petition fall within the above definition of "accident." *Allen*, 436 S.W.3d at 553. The Court finds that they do not.

While the Court agrees with Defendants that the Second Amended Petition alleges only negligence and failure to warn claims against Mullen, the Court must also consider what Safeco knew at the time of McCrackin's Second Amended Petition or "could be known from a reasonable investigation." *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 42 (Mo. Ct. App. 2007).[4] That investigation would have shown in March 2023, evidence that Mullen's

---

[4] While Safeco provides citations to extrinsic facts beyond the date McCrackin filed his Second Amended Complaint, the Court agrees with Defendants that it should "rely only on the facts known or reasonably ascertainable at the time [McCrackin] commence[d] the action." Here, the Second Amended Complaint was filed on March 16, 2023; and therefore, the Court limits its inquiry into what Safeco knew or could reasonably ascertain up to that date, and not after.

5

actions did not fall within an "occurrence" under the Safeco Policy. First, in April 2019, the state filed an indictment against Mullen charging him with first-degree murder and armed criminal action.[5] Further, in March 2020, Mullen admitted in a proffer for the criminal case against the additional shooter that he fired the gun "*in* [Decedent's] direction[.]" (Doc. #80-7, p. 9) (emphasis added). Finally, a probable cause statement written by a detective involved in investigating the shooting identified Mullen as "Shooter #2" that "fired [a handgun] *at* [Decedent.]" (Doc. #80-6, p. 1) (emphasis added).[6] None of these facts indicate that Decedent's death was an "unexpected event" or simply a "mishap resulting in injury." *J.E. Jones Const. Co.*, 486 F.3d at 341.

Therefore, the Court finds that at the time McCrackin requested coverage under the Second Amended Petition, Safeco knew or it was reasonably apparent that Decedent's injury and death were "expected" or foreseeable, and therefore, not an accident or "occurrence" under the Safeco Policy. *Am. Fam. Mut. Ins. Co., S.I. v. Mid-Am. Grain Distributors, LLC*, 958 F.3d 748,

---

[5] Defendants argue that the April 26, 2019, indictment is an "inadmissible statement unsupported by evidence." (Doc. #84, p. 16.) However, the Court disagrees that Safeco could not have relied on this evidence to ascertain whether Mullen's conduct fell within an "occurrence" under the Safeco Policy. *Safeco Ins. Co. of Am. v. Schweitzer*, 372 F. Supp. 3d 884, 891 (W.D. Mo. 2019) (citing pending criminal charges for the conduct alleged in plaintiff's petition as a reason no coverage existed under a policy exclusion).

[6] Again, Defendants take issue with the admissibility of this evidence as "inadmissible because it lacks personal knowledge and is hearsay." (Doc. #84, p. 12.) First, the Court disagrees with Defendants that Safeco could not have relied on the probable cause statements at the time Defendants filed the Second Amended Complaint as the question is what Safeco knew or could have reasonably known at the time of the Second Amended Complaint and whether those facts fell within the definition of "occurrence."

Further, to the extent Defendants argue the probable cause statement is hearsay, the Court agrees with Safeco that "though the third-party witness statements may be hearsay, the factual findings in the probable cause statements (*see* SUMF, ¶¶ 5, 7, 9, 11) are . . . admissible under the public records exception to hearsay." (Doc. #87, p. 18); *see also Simmons v. Chicago & Nw. Transp. Co.*, 993 F.2d 1326, 1328 (8th Cir. 1993) (finding a report admissible under the public records exception to hearsay that was "timely[,]" drafted by "an experienced and skilled officer," and had no indication that the officer "was motivated by anything other than objectivity"). Ultimately, Defendants have failed to show the probable cause statement lacks "trustworthiness." Fed. R. Evid. 803(8).

6

754 (8th Cir. 2020) (citing *D.R. Sherry Constr., Ltd. v. Am. Fam. Mut. Ins.*, 316 S.W.3d 899, 905 (Mo. 2010)); (Doc. #11-1, p. 41).

### B. Whether the Exclusion for Violation of Criminal Law Bars Coverage

Safeco further argues the plain terms of its Policy exclusion on criminal law violations prohibit coverage for Mullen's actions. Defendants disagree and argue that "the Missouri Court of Appeals has held that a criminal act exclusion applies only if the insured performs a deliberate and planned criminal act[.]" (Doc. #84, p. 56.) The Court agrees with Safeco and finds that even if Decedent's death was an "occurrence" under the Safeco Policy, the Policy's exclusion for violations of criminal law prohibits coverage.

Exclusions are provisions that limit risks that otherwise might have been covered. *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). Exclusionary clauses in insurance policies are strictly construed against the insurer. *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. banc 2010). Here, Safeco bears the burden of showing the exclusion applies. *Id.*

The Safeco Policy excludes from coverage bodily injury "which results from violation of criminal law committed by, or with the knowledge or consent of any insured[,]" and that the "exclusion applies whether or not any insured is charged or convicted of a violation of criminal law, or local or municipal ordinance." (Doc. #11-1, p. 31.) Contrary to Defendants' argument that the Missouri Court of Appeals opinion in *Pitt v. Leonberger*, 528 S.W.3d 1, 5 (Mo. App. E.D. 2017) is controlling, the Court disagrees. Safeco correctly points out that the Court of Appeals in *Pitt* provided that "the [p]olicy at issue groups the descriptive word 'criminal' with intentional, dishonest, malicious, and fraudulent acts. Thus, it is logical to construe the [p]olicy's use of the word criminal as implying a deliberate and planned act." *Id.* at 16.

7

By contrast, Safeco's Policy makes no such grouping but simply excludes from coverage violations of criminal law committed "by" or "with the knowledge or consent" of the insured. (Doc. #11-1, p. 31.)  Therefore, the Court agrees with Safeco that "there is no textual basis [] for construing the Safeco Policy's exclusion to imply a deliberate and planned act." (Doc. #87, p. 21.)  Indeed, from the plain text, any violation of criminal law committed by the insured resulting in bodily injury is excluded from coverage.  *See Todd*, 223 S.W.3d at 160 (courts must give effect to unambiguous language in an insurance contract).

Ultimately, at the time of Defendants' Second Amended Complaint, Mullen had been charged with first-degree murder and armed criminal action.  While Mullen eventually pled guilty to a lesser, but still criminal offense, the exclusion applies "whether or not" he was charged or convicted of a particular crime.  (Doc. #11-1, p. 31); *see also Safeco Ins. Co. of Am. v. Schweitzer*, 372 F. Supp. 3d 884, 891 (W.D. Mo. 2019) (applying the exclusion even though criminal charges were still pending).  Further, while the Second Amended Complaint frames Mullen's actions as a "prank" and mere "negligence[,]" those allegations are for the same conduct that led to Mullen's initial charge and eventual guilty plea.  (Doc. #26-1, p. 2); *see Safeco Ins. Co. of Am. v. Yount*, No. 4:19-CV-00890-MTS, 2020 WL 6445840, at *3 (E.D. Mo. Nov. 3, 2020) (comparing the allegations in the civil complaint that did not expressly assert defendant committed a criminal act with whether the same factual allegations applied to a criminal law violation).  Therefore, the plain and unambiguous terms of the violation of criminal law exclusion prevents coverage for Mullen.

In conclusion, the Court finds that Safeco is entitled to summary judgment and the Court declares that the Safeco Policy provides no coverage for McCrackin's claims against Mullen as Safeco has no duty to defend Mullen, and thus no duty to indemnify.

## IV. CONCLUSION

Accordingly, Safeco's Motion for Summary Judgment (Doc. #79) is GRANTED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: February 24, 2025